## SCHUYLER ELECTRIC CO. v. ELECTRICAL ENGINEERING & SUPPLY CO.

### (Circuit Court, N. D. New York. March 16, 1894.)

PATENTS—LIMITATION OF CLAIM—ELECTRIC LIGHT SWITCHES.
In the Perkins patent, No. 247,103, for a circuit breaker for electric lamps, claim 1, for the combination, in an electric light switch, of a ratchet having metallic projections and insulating teeth between them, and a pawl or detent for engaging with the insulating teeth when released from contact with the metallic projections, is so limited by the prior state of the art and its own language that it does not cover switches made under the Crowell patent, No. 436,122, whose only points of resemblance are that they are snap switches, and cannot be turned backward, those features having been open alike to both inventors.

This was a suit by the Schuyler Electric Company against the Electrical Engineering & Supply Company for infringement of a patent.

C. L. Buckingham, for complainant.

Alfred Wilkinson, for defendant.

COXE, District Judge. This is an infringement suit based upon letters patent, No. 247,103, granted September 13, 1881, to Charles G. Perkins for a circuit breaker for electric lamps. The inventor says:

"My invention relates to improvements in that class of switches for incandescent electric lamps in which the break is effected by the snap or instantaneous reaction of a spring when released from contact with a conducting point or plate; and it consists in mechanical details for effecting this, the principal features of which are a ratchet wheel having both conducting and insulating teeth combined in operative relation with a spring pawl or detent, which acts as a contact maker with the conducting portions of the ratchet, and by engagement with the insulating teeth prevents the ratchet from being turned backward when the pawl has been released from contact with the said metallic portions."

After describing the mechanism as shown in the drawings he proceeds:

"The principal advantages secured by the constructions above described are, first, that the circuit cannot be completed by turning the key backward, so that when the circuit is broken it must be accomplished by an instantaneous snap or reaction of the spring pawl as it leaves the conducting portion of the ratchet; secondly, that the contact spring cannot be injured by the attempts of incautious persons to turn the key backward, as might be the case with the

lamps now in use; thirdly, good conducting metals which do not possess the requisite resistance for contact springs may be employed with a spiral spring of steel or similar metal; and, finally, the arrangement of the parts is compact and durable."

The accompanying diagram, enlarged somewhat from the drawing of the patent, will serve to illustrate the invention:

The first claim only is involved.   It is as follows:

"(1) The combination, in an electric light switch, of a ratchet having metallic projections and insulating teeth in the intervals between the same and a pawl or detent for engaging with the insulating teeth when released from contact with the metallic projections, as and for the purpose specified."

It will not be pretended that the invention is a fundamental one. If there were nothing else in the case the language just quoted would preclude such an idea.   The inventor concedes that his invention consists only in mechanical details for effecting improvements in circuit breakers.   The device of the patent is an ingenious little contrivance for opening and closing an incandescent electric lamp circuit. It is shown as located in a lamp socket.   Such an invention in any other art would probably be entitled to little consideration, but when the courts have to deal with patents relating to electricity they are apt to regard with superstitious awe the smallest contrivance by which that mysterious force is harnessed and set to work.   Although this view of the subject may be correct in many instances it is thought that it is hardly applicable to the case at bar.   Snap-action circuit breakers, used in connection with alternating insulating and conducting material, were old.   So were switches having a wiping contact and a turn in one direction only.   This being so, it certainly did not require a profound knowledge of electrical science to produce the patented structure.

In 1871 Gilliland obtained a patent for certain improvements in dial telegraphs in which he describes a disk having marginal notches and intermediate smooth portions which serve, in connection with a spring conductor, alternately to make and break the circuit. When the spring snaps off from a conducting tooth it rests in an insulating notch and the circuit is broken.   Backward movement is prevented by a pawl bearing against a collar.   The mechanical construction is, of course, different, but the principle is the same as in the Perkins patent.

The patents to Guest, Rogers and Floyd show different means of accomplishing the same result, viz., the quick making and breaking of an electric circuit.

It is perfectly clear, therefore, that the Perkins patent does not cover all snap-action circuit breakers and that it is confined both by the prior art and its own language to the device described.   At least it is clear that it cannot be expanded to cover devices differing in size, shape, material, situation, mode of operation and object to be attained; devices whose only points of resemblance are features open alike to defendant and complainant.

The defendant's switches are made under letters patent No. 436,122, granted September 9, 1890, to Howard H. Crowell. They are snap switches it is true, and they cannot be turned backward, but in other respects they are much nearer several structures found in the prior art than to the Perkins switch. They are mounted on a large stationary china base, three inches in diameter, and are intended to be screwed on a wall or other support. They cannot be used in a lamp socket. Neither of the defendant's switches has a ratchet wheel and No. 2 has no insulating teeth or any equivalent therefor. Neither has "a pawl or detent" unless a very broad construction is given to these words. Both belong to a different type of switch from the patented switch.

The court cannot avoid the conclusion that it would be doing injustice to the defendant and others to give the Perkins patent a construction so broad as to suppress improvements like those embodied in the Crowell switches.

The bill is dismissed.